You may proceed when you're ready, Ms. Dr. Feldman. Thank you, your honor. May it please the court, I will focus my argument today on issues four through six, but I can answer any questions the court may have about issues one through three. The record in this case reflects that no one knew the law at the time of this plea. Not defense counsel, not the prosecutor, not the district judge, not the defendant. And who could blame them? Everyone was complying with the law as it stood at the time. But during this appeal, the Supreme Court handed down rehafe, overturning well-settled precedent from every circuit. We now know that knowledge of being illegally or unlawfully in the United States is an essential element of being an alien in possession of a firearm. The government must prove that knowledge beyond a reasonable doubt. Here, and this is reflected in the PSR, Jawher had been living in the United States for ten years. He had been married to a U.S. citizen, his wife Brandy, for nine of those years. He had been consistently working as a gas station clerk for seven of those years. And he and his wife had a petition to get him legal permanent resident status that had been pending since June of 2015. Indeed, at his detention hearing, Jawher insisted that he was in the United States lawfully. And that is on page ten of the transcript that was filed with the court. In addition, a letter from his immigration attorney was filed with the district court. And that would be the attachment that goes along with docket number 29, the notice of immigration status. And his attorney advised, Mr. and Mrs. Jawher have been married and living together for more than nine years. And they have presented substantial proof that their marriage is genuine. Their petition has been pending with USCIS since June of 2015. The couple was interviewed in October of 2015 and again on November 17, 2017. But the petition still has not been adjudicated. During that time, Mr. Jawher has been legally authorized to remain in the U.S. and to work based on his pending application. So, at the time of this offense, Jawher was married to a U.S. citizen. And per his immigration attorney, he was legally authorized to remain in the U.S. based on his pending application for legal permanent residence status. Had Jawher known that knowledge was an essential element of his offense, there is a reasonable probability that he would not have pled guilty. This Court's decision in Ochoa-Gonzalez controls this case. And the Second Circuit's decision in Baldy, which we submitted in a 28-J letter, is very persuasive authority on this point. In Ochoa-Gonzalez, the defendant pled guilty to aggravated identity theft, but insisted that she had not known at the time of the offense that the false ADIT number she had used belonged to a real person. While that appeal was pending, the Supreme Court handed down Flores-Figueroa, which overruled Circuit precedent and held that knowledge that a stolen identity belongs to a real person is an essential element of aggravated identity theft. This Court had no trouble vacating that plea. As in this case, at the time of the plea, everyone was complying with the law. As in this case, the defendant had insisted that she did not have knowledge. Well, it seems to me that your strongest case is Raheve itself, because this is Raheve. Sure. I mean, this is the Raheve case. Is there any question that the conviction was vacated in Raheve? It was remanded for a determination in Raheve, and actually I think this case is stronger than Raheve because there, you know, he was on a student visa, the school had given him notice that Let's assume it's at least as strong as Raheve. Yes. Okay. What was the ultimate disposition in Raheve? I mean, how was Raheve resolved? The Supreme Court remanded the case for a determination. So it was, I believe it was remanded to the Circuit Court, which remanded it to the District Court, I believe. Well, that's what I'm looking at. It says we reverse and remand, we reverse the judgment of the Court of Appeals, which I think was the 11th Circuit, and remand the case for further proceedings consistent with this opinion. So do you know, I mean, does that mean that the Court of Appeals had to vacate the conviction and send it back? Is that what we're talking about here? I believe so, yeah. And I honestly don't know what the ultimate disposition was, but I believe it was reversed and then remanded back to the District Court. And if you look at the Second Circuit's decision in Baldy, I believe that's on point as well, and this also is a stronger case than that case, where the Second Circuit also vacated the plea. So this Court would be vacating the plea and remanding it for further proceedings consistent with the opinion. And so in Baldy, the defendant actually was subject to a final removal order at the time of the offense. Nevertheless, because he had been released on effectively immigration supervised release and had argued that therefore he was lawfully in the U.S., the Second Circuit found that there was a reasonable probability that had he known about the knowledge requirement, he would not have pled guilty and that there was actually significant possibility that he pled guilty to a crime that he was not guilty of. Now, this case is stronger. Jauer was not subject to any removal order at the time of the offense, much less a final one. He had a pending application for legal permanent resident status based on his longtime marriage to a U.S. citizen, and his attorney advised that he was legally authorized to remain in the U.S. and to work based on his pending application. This was a triable case on the issue of knowledge. This was a winnable case on the issue of knowledge, especially since Jauer would have been entitled to an instruction that the government had to prove that he knowingly did an act which the law forbids. So Rehave has a discussion. Normally, ignorance of the law is not a defense, but when it comes to a collateral rule of law, such as immigration status, it can be raised. So Jauer would have gotten an instruction to that effect. You know, the notion that he pled guilty without any notice that this was an essential element in a case that I believe was winnable on this element, that cannot comport with due process. And because he didn't receive notice of the knowledge element, because there was no factual basis set forth as to that element, and because had he known that the government would be held to its burden on that element, there is a reasonable probability that he would not have pled guilty. Counsel, just so I'm clear in my own mind, do you agree that plain error applies here, but that because of these ambiguities about his immigration status that this is plain error here? So I included a way too long footnote in my brief that deals with this question because there are arguments circulating around the fact that plain error should not apply in cases like this. I mean, everyone was, you know, abiding by controlling precedent at the time, so the notion that defense counsel should have raised this issue when it was contrary to existing law and should therefore be penalized by not doing so based on a plain error standard seems wrong to me. And there's some suggestion in Boykin that it should warrant automatic reversal. There's some suggestion that harmless error should apply based on the combination of Rule 11 and a constitutional issue. However, I don't even think that the court needs to address that issue because this case is reversible under plain error. You know, Baldi was a plain error case. Ochoa Gonzalez was a plain error case. I mean, this is, you know, I know we're not supposed to use emphatic language in the legal provision, but this is a clear case for reversal. I mean, this was he pled guilty. He didn't know what he was pleading guilty to. All right. I believe we understand your argument. Time's expired. Thank you very much. Mr. Ware, when you're ready. May it please the Court. Judge, this is not rehalf. There are four significant differences in this case and rehalf. Rehalf was a trial. This case was a plea. In rehalf, the issue of his illegal knowledge was severely contested.  The rehalf was a trial. This case was a plea. Well, let me stop you there. He testified that he thought he was legal. No. No, he didn't. I'm going to explain why. He didn't testify. This was at a detention hearing, and the issue in the context of the argument at the detention hearing is, was he going to be removed by ICE? And the issue revolved around what his status is. And his status was he was out of status, but because he had a pending application, he was not subject to removal. In other words, ICE was obeying removal. It's not that his status was changed. He's still out of status. He's still illegal. Here's what he said. What do you believe your status was? I'm legal. Well, what's that based on? I'm married. I have a Social Security card. I have authorization to work. Right. So he testified under oath, I'm legal. So doesn't that at least create a fact issue? No. The judge asked him, do you have a permanent resident card? He says, no, I don't. He's admitting he's out of status. What he's saying is, they're not deporting me right now. He knows he has a removal order. But, I mean, that's what an immigration lawyer might conclude based on that, not a criminal defendant or someone subject to removal. Isn't that fair? No, I don't think so. There's an Eighth Circuit case in the 90s, Bazargan, cited at 992 Fed 2nd 844, 1993 case. I didn't cite it in the brief. But the very issue is discussed in that case. And similar situation where there was work authorization, and the court said, that doesn't prove that you're legally in the United States. Isn't that up to the jury, in other words? I mean. Well, if it was a trial, it would be. We've got a plea, so we've got a different standard here to assess. And the standard is, under the record, is there evidence of his knowledge? And the record is replete with his knowledge. In fact, from his own mouth, the, not only the detention hearing and his admission that he doesn't have a green card, in other words, he doesn't have status. The motion to revoke the magistrate court's order filed by the defendant, Mr. Jahir, lays out his whole status. It's not that I don't disagree with the facts. I agree with the facts as they're set out. The difference is, he's admitting his illegal status. It's, he's admitting that he came in on a nonimmigrant visa, one-month visitor visa, and overstayed. That is knowledge that he's here illegally. But he testified he's here illegally. I mean, how, that, the fact that he's here illegally is not contested. That is not a fact and issue. That was not a fact and issue in Rahif. So the question is, does he know that he's here illegally? He testified under oath, I'm here, I am legally in the United States. I think that he was talking about the vernacular of, they're not removing me. Well, isn't that what Rahif was talking about? No. That you have to know that you're in an illegal status. I think you're really, I think you're really slicing Rahif awful, awful thin. And when a guy actually says, I have a work authorization, I'm married to a United States citizen, I am here legally. All right. That there is not a fact dispute about his knowledge of whether he's here illegally. Agreed. I am doing it slicingly thin. And if you don't think that that's worthy of pursuing, let me throw another wrinkle in. Rahif's indictment was bad. Mine is good. I've got him charged both sections as an illegal alien and then also entry under a nonimmigrant visa. And certainly under the section B, 5B, as a nonimmigrant visa, there's no doubt that he's guilty of that. I mean, everything he admits shows that he entered as a nonimmigrant, overstayed, didn't adjust his status. So there is no reasonable probability this case is going to change. When it gets remanded, we're going to pursue that venue and he's going to have to plead guilty. It's the same situation. There's no way out of it. Did he plead guilty to that? I'm sorry? Did he plead guilty? No, no. And I don't, I plead in the conjunctive. So, you know, we would have to pick which one. So is the argument that this isn't plain error because there's that second charge in the indictment? I think it helps. My argument is actually that it's not. First of all, my argument is it's not error. I'm being told that that's probably not going to work. So I'm going to say. Well, I said my argument. Maybe you convinced the other two. Right. I understand it's a close argument. I get that. But my point is right. This isn't exactly rehab. It's different. And I think those distinctions are worth looking at. Look at the distinction with Baldy. Baldy, this case is Baldy in the sense of Baldy says there are situations that you could imagine where there'd be no doubt. An alien crosses the border surreptitiously. There's no doubt that he knows that he's illegal. New York just passed a rule saying that illegal aliens can have driver's licenses. It doesn't change the equation. The surreptitious alien that goes up to New York and gets a driver's license still knows he enters illegally. Jahir knows he's here illegally. He overstayed his visa. He tried to adjust his status because he knows he's illegal. It didn't work. They denied it. He knows he's illegal. He then is told we're removing you. You're removable. You are illegal. We are removing you. He then files a petition. They say we're not going to remove you while this is in abeyance, but you're still illegal. So that's my argument. I know it's fine. I understand that. But under the law, under the plea law of plain error, the facts are that it's a good plea. The colloquy is also good. There's some discussion about knowledge, and the knowledge is implicit in the plea. You've got to take the judge's recitation of essential elements in context. They occurred right after my recitation of the facts. And during my recitation of the facts, I talk exactly about this. I talk about how Jahir entered on his one-month visitor visa and overstayed and became illegal at that point. The judge then goes through the elements, and he says, are you an illegal alien? Not were you. Are you an illegal alien? And Jahir now says, well, that's a bad colloquy, and whether he's an illegal at the time of the plea has nothing to do with the time of the offense. But that is a reading completely out of context. What the judge was asking is, are you an illegal alien from the day that you overstayed your visa back in 2007? And that was the context of that colloquy. And everybody understood that. I mean, Judge Autry wasn't confused about, you know, if you're illegal at the time of the plea, does that make you, you know, you're not illegal at the time of the offense. That's clearly not what was happening here. So, again, this case is better than Rehalf. It's better than Baldy. And I don't think, and admittedly, dumb luck on my part with the indictment. I mean, I don't know why I charged it both and these other people didn't, but I think it saves it. And so if there's any questions about that. Seeing none, thank you. Thank you. Your time had expired. I'll give you one minute. Okay. Thank you. May it please the court. So the notion that it was alternatively pled, obviously, is in a rebuttal to the voluntariness of the plea to the actual charge that he pled to. And I'll just point the court to some helpful language in Baldy, which is on page 16. The government argues that the burden under 922G is solely to establish that the defendant knew the facts that the law deems constitute illegal status. That argument was squarely rejected in Rehalf. The government argued there that because ignorance of the law is not a defense to a criminal charge, it was not required to prove the defendant's knowledge that he was not legally present. The court, however, following criminal law scholars and the model penal code, noted that this rule applies where a defendant is unaware of the criminal statute prohibiting his conduct. It does not apply where, as here, the defendant is ignorant or mistaken about a collateral rule of law, such as the complex question of immigration law in this case, where such mistake negates a material element of the offense. So there is a distinction between knowledge of the facts underlying illegal status and knowledge of illegal status that the court really well illustrates there. Thank you very much. We'll take the case under advisement. I want to thank you for your service on the CJA panel as well. As I said, it's indispensable in our system. Thank you.